**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL AKSMAN, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| -against- ) | Civil Action No. 1:20-cv-08045 |
| ) | |
| GREENWICH QUANTITATIVE ) | |
| RESEARCH, LP, ) | |
| ) | |
| *Respondent*. ) | |

**RESPONSE IN OPPOSITION TO MICHAEL AKSMAN'S**
**<u>PETITION TO VACATE ARBITRATION AWARD</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ............................................................................................... 2

   A.   Greenwich Hires Michael Aksman as Senior Portfolio Manager........................... 2

   B.   The Parties Enter Into a Restrictive Covenant Agreement with an Arbitration Clause...... 3

   C.   Aksman Repeatedly Represents That He Manages An Equity Account for Brocco at Wedbush ......................................................................................................................... 4

   D.   Greenwich Uncovers Aksman's Fraud and Files a Demand for Arbitration...................... 5

   E.   Aksman Attempts to Avoid Service, and Thereafter Refuses to Participate in the Arbitration Process.................................................................................................................. 6

STANDARD OF REVIEW .............................................................................................. 9

ARGUMENT ................................................................................................................... 10

   I.   AS THE ARBITRATOR FOUND, GREENWICH PROPERLY SERVED AKSMAN WITH THE DEMAND FOR ARBITRATION ..................................... 10

   II.   BY REFUSING TO PARTICIPATE IN THE ARBITRATION PROCESS, AKSMAN HAS WAIVED ALL ARGUMENTS REGARDING THE ARBITRABILITY OF THIS DISPUTE ..................................................................... 13

   III.   THE ARBITRABILITY OF THIS DISPUTE IS A QUESTION FOR THE ARBITRATOR, NOT THE COURT ......................................................................... 15

      A.   Because Aksman Challenges the Validity of the Agreement As a Whole, the Arbitrator, Not the Court, Must Decide Arbitrability ............................................ 16

      B.   Aksman's Failure to Challenge the Delegation Clause Specifically Means the Arbitrator, Not the Court, Must Decide Arbitrability ............................................ 18

   IV.   THE ARBITRATOR CORRECTLY DECIDED THAT THIS DISPUTE IS ARBITRABLE .................................................................................................... 19

   V.   AKSMAN'S CHALLENGE TO THE ARBITRATOR'S DAMAGES AWARD FAILS 21

CONCLUSION ............................................................................................................... 21

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Adams v. Suozzi,*
    433 F.3d 220 (2d Cir. 2005)...............................................................................9

*Abeona Therapeutics, Inc. v. EB Research P'ship, Inc.,*
    18cv10889(DLC), 2019 WL 623864 (S.D.N.Y. Feb. 14, 2019) ............................... 17, 20

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.,*
    344 F.3d 255 (2d Cir. 2003)............................................................................. 21

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006)................................................................................. 15-17

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.,*
    316 F. Supp. 3d 635 (S.D.N.Y. 2018) .............................................................. 13

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)...................................................................................... 9

*Citizens Bank v. Alafabco, Inc.,*
    539 U.S. 52 (2003)........................................................................................ 9

*C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.,*
    774 F. Supp. 146 (S.D.N.Y. 1991) .................................................................. 11

*ConnTech Development Co. v. Univ. of Connecticut Educ. Properties, Inc.,*
    102 F.3d 677 (2d Cir. 1996)........................................................................... 12

*Contec Corp. v. Remote Sol., Co.,*
    398 F.3d 205 (2d Cir. 2005)........................................................................... 18

*Cook Indus., Inc. v. C. Itoh & Co. (America) Inc.,*
    449 F.2d 106 (2d Cir. 1971)........................................................................... 13

*D.H. Blair & Co. v. Gottdiener,*
    462 F.3d 95 (2d Cir. 2006) .............................................................................. 9

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,*
    333 F.3d 383 (2d Cir. 2003)............................................................................. 9

*Genger v. Genger,*
    252 F. Supp. 3d 362 (S.D.N.Y. 2017) ........................................................... 9-10

*Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*,
 372 F.2d 753 (2d Cir. 1967)..................................................................................... 20

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S.Ct. 524 (2019) ................................................................................................ 18

*In the Matter of the Arbitration between Halcot Navigation Ltd. P'ship and Stolt–Nielsen*
 *Transp. Group, et al.*,
 491 F. Supp. 2d 413 (S.D.N.Y. 2007) ...................................................................... 14

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
 No. 7:10–cv–9012 (VB), 2011 WL 3806255 (S.D.N.Y. Aug. 24, 2011) ........................ 17

*Isaacs v. OCE Bus. Servs., Inc.*,
 968 F. Supp. 2d 564 (S.D.N.Y. 2013) ...................................................................... 17

*Kopple v. Stonebrook Fund Mgmt., LLC*,
 794 N.Y.S.2d 648 (App. Div. 1st Dept. 2005).............................................................. 20

*Liberty Mut. Ins. Co. v. Sedgewick of New York*,
 No. 15280/05, 2006-10186, 842 N.Y.S.2d 68, 69, 2007 N.Y. Slip Op. 06882, 2007 WL
 2729450 (N.Y.A.D. 2 Dept. Sep. 18, 2007)................................................................ 12

*Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*,
 334 U.S. 219 (1948)................................................................................................... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983)..................................................................................................... 10

*Nat'l Wrecking Co. v. Int'l Broth. Of Teamsters, Local 731*,
 990 F.2d 957 (7th Cir. 1993) ................................................................................... 15

*New York City Dist. Council of Carpenters v. Trs. of the New York City Dist. Council of*
 *Carpenters Welfare Fund*,
 16-CV-3429 (ARR)(ST), 2016 WL 6902138 (E.D.N.Y. Nov. 23, 2016) ...................... 12

*Oracle Corp. v. Wilson*,
 276 F. Supp. 3d 22 (S.D.N.Y. 2017) .......................................................................... 9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
 388 U.S. 395 (1967).................................................................................................. 16

*Rent-a-Center, West, Inc. v. Jackson*,
 561 U.S. 63 (2010) ............................................................................................. 18-20

*Rosati v. E.M. Wings, LLC*, 09 CV 4680 (DRH)(ARL),
     2011 WL 13305366 (E.D.N.Y. Apr. 12, 2011) ............................................................ 17

*Rubin v. Sona Intern. Corp.*,
     457 F. Supp. 2d 191 (S.D.N.Y. 2006) ...................................................................... 17

*S & G Flooring Inc. v. New York City Dist. Council of Carpenters Pension Fund*,
     No. 09 Civ. 2836 (NRB), 2009 WL 4931045 (S.D.N.Y. Sept. 1, 2009) ...................... 14

*Sec. & Exch. Comm'n v. Save The World Air Inc.*,
     No. 01 CIV. 11586(GBD)FM, 2005 WL 3077514 (S.D.N.Y. Nov. 15, 2005) ............... 10

*South East Atlantic Shipping Ltd. v. Garnac Grain Co.*,
     356 F.2d 189 (2d Cir. 1966)..................................................................................... 12

*Telenor Mobile Commc'ns AS v. Storm LLC*,
     584 F.3d 396 (2d Cir. 2009)..................................................................................... 17

*Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension
     and Welfare Funds v. Rodrigue*,
     13-CV-5760 (JS)(SIL), 2017 WL 9280115 (E.D.N.Y. Jan. 25, 2017)........................... 12

*UBS Securities LLC v. Prowse*, 20cv217 (JGK),
     2020 WL 433859 (S.D.N.Y. Jan. 27, 2020) ............................................................... 19

*United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*,
     484 U.S. 29 (1987).................................................................................................. 12

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*,
     304 F.3d 200, 214 (2d Cir. 2002).......................................................................... 12, 21

*Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*,
     963 F. Supp. 2d 289 (S.D.N.Y. 2013) ...................................................................... 13

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 1, 2 ..................................................................... 9, 16-18

Del. Code Ann. tit. 10, § 3104(d)(2).................................................................................. 10

New Jersey Rules of Court Section 4:4-4(a)..................................................................... 10

Respondent Greenwich Quantitative Research LP ("Greenwich"), by and through undersigned counsel, hereby files its Response in Opposition to Michael Akman's Petition to Vacate the Arbitration Award.

## **INTRODUCTION**

Petitioner Michael Aksman ("Aksman") is a fraudster who—after scamming Greenwich into hiring him as its Senior Portfolio Manager—refused to participate in any portion of the arbitration proceeding initiated by Greenwich against him in November 2019, despite the existence of a signed, valid arbitration agreement between the parties. After the Demand for Arbitration was filed, Aksman spent months dodging personal service of process, even instructing his wife and housekeeper to tell process servers that he had moved to California. Then, after being properly served with the Demand for Arbitration—via multiple channels, including email, personal service, and Federal Express—Aksman intentionally ignored every pleading, communication, and discovery request in this case, and failed to attend the arbitration hearing. On July 14, 2020, the arbitrator Frank Maas, a retired Chief Magistrate Judge with over seventeen years of service in this District, issued his final award, observing that "it would be difficult to conceive of a fraud more blatant than the one that Aksman perpetrated upon Greenwich," and awarding Greenwich $4,030.982.58 in compensatory and punitive damages.

Now, Aksman has the audacity to seek vacatur on the grounds that he was "not properly served" with the Demand for Arbitration (a falsehood directly contrary to the Arbitrator's findings), and that the parties' agreement to arbitrate is void. This is too little, too late. Aksman has waived each of his objections to the award by his bad-faith refusal to participate in the arbitration process. In addition to being waived, Aksman's arguments are also misplaced, for three reasons: *first*, under clear Supreme Court precedent, the arbitrability of this dispute was properly decided by the arbitrator and is not reviewable by this Court; *second*, there is a valid, enforceable

agreement to arbitrate the parties' dispute; and *third*, Aksman's challenges to the components and quantum of the award are both waived and foreclosed under governing caselaw.  For these reasons, described more fully below, Aksman's Petition to Vacate should be denied.

## STATEMENT OF FACTS

Greenwich is an asset management firm specializing in the quantitative trading of global equities.  *See* Consolino Decl. Ex. D (Final Arbitration Award, hereafter "Award," at 1).  Its founder and Chief Investment Officer, Gene Reilly, has had a lengthy career in the financial services industry, during which he served as a partner at Goldman Sachs, where he managed Pan-Asian equity trading, and oversaw global quantitative trading for Merrill Lynch.  *See id.* at 4.  In 2017, he founded Greenwich to provide market neutral quantitative investment products for institutional clients, such as pension and hedge funds and endowments.  He anticipated launching the fund in late 2019.  *See id.*

### A.  Greenwich Hires Michael Aksman as Senior Portfolio Manager

In the spring of 2017, Greenwich began the search for a Senior Portfolio Manager for the newly-formed firm.  Through a recruiter, he located Aksman, whose résumé indicated that he had a master's degree in Computational Mathematics from MIT and a PhD in Theoretical Physics from the Soviet Academy of Sciences.  The résumé also reflected substantial experience trading equities. *See* Award at 4-5.  During the interview process, Aksman represented to Reilly that he was currently managing a $10 million equity account housed at the brokerage firm Wedbush Securities (the "Wedbush account") for an individual named Stefano Brocco, who himself was a partner at A.R.T. Advisers, a well-regarded quantitative investment firm in New York.  *See id.*  at 5.

During the interview process Aksman provided Reilly with what purported to be current "Equity Summary Reports" for the Wedbush account, which reflected highly favorable (but as it turns out, fictitious) returns, and suggested that he was trading in the Wedbush account very

successfully.  *See id.*  Aksman represented to Reilly that these reports were Wedbush documents.
*See id.*  Aksman also provided copies of his personal tax returns, which seemed consistent with
the earnings that he would have been likely to receive for managing Brocco's account.  Although
Aksman was unable to provide audited financials for the Wedbush account, he stated that this was
because his investment advisory agreement with Brocco precluded such disclosure, which seemed
plausible at the time.  *See id.*

### B. The Parties Enter Into a Restrictive Covenant Agreement with an Arbitration Clause

After Reilly decided to hire Aksman as Senior Portfolio Manager at Greenwich, the parties
entered into two agreements: an October 24, 2017 Restrictive Covenants Agreement ("RCA")
containing the parties' agreement to arbitrate, which was superseded by a March 7, 2019 RCA
containing an identical arbitration clause, and an October 24, 2017 Employment Agreement (the
"Employment Agreement").[1]  *See* Reilly Decl. Exs. A-C.  The arbitration clause (hereafter,
"Arbitration Agreement") contained in the RCA provides the following:

> (b) <u>Arbitration</u>.
> (i) In consideration of Employee's employment or engagement with the
> Company, his promise to arbitrate all employment or service related disputes
> and Employee's receipt of the compensation and other benefits paid to
> Employee by the Company, at present and in the future, EMPLOYEE
> AGREES THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR
> DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY
> EMPLOYEE, OFFICER, DIRECTOR, STOCKHOLDER OR BENEFIT
> PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR
> OTHERWISE) ARISING OUT OF, RELATING TO, OR RESULTING
> FROM EMPLOYEE'S EMPLOYMENT WITH THE COMPANY OR THE
> TERMINATION OF EMPLOYEE'S EMPLOYMENT WITH THE
> COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT,
> SHALL BE SUBJECT TO BINDING ARBITRATION.  Employee agrees
> to arbitrate such disputes, and thereby agrees to waive any right to a trial by
> jury, including any statutory claims under state or federal law, including, but

---

[1] The October 4, 2017 Employment Agreement was superseded by a March 6, 2019 Employment
Agreement, and thereafter extended by a June 7, 2109 letter.  *See* Reilly Decl. Exs. D-E.

not limited to, claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the New York State Labor Law, claims of harassment, discrimination or wrongful termination and any statutory claims. Employee further understands that this agreement to arbitrate also applies to any disputes that the Company may have with Employee.

(ii) Employee agrees that any arbitration will be administered by Judicial Arbitration & Mediation Services ("JAMS"), or its successor, pursuant to its Comprehensive Arbitration Rules and Procedures and JAMS appellate procedures (such rules and procedures, the "Procedure") before a sole arbitrator who shall be a lawyer. Employee agrees that the arbitration will be conducted in New York, New York. Employee agrees that the arbitrator shall have the power to decide any motions brought by any party to the arbitration, including motions for summary judgment and/or adjudication and motions to dismiss and demurrers, prior to any arbitration hearing. Employee also agrees that the arbitrator shall have the power to award any remedies, including attorneys' fees and costs, available under applicable law and that any decision or judgment of the arbitrator will be enforceable in any court of competent jurisdiction. Employee agrees that the decision of the arbitrator shall be in writing and shall be binding upon Employee and the Company.

(iii) Except as provided by the Procedure and this Agreement (including, without limitation, Section 7 hereof) or any other agreement, plan or written policy to which you may be subject, arbitration shall be the sole, exclusive and final remedy for any dispute between Employee and the Company. Accordingly, except as provided for by the Procedure and this Agreement (including, without limitation, Section 7 hereof) or any other agreement, plan or written policy to which you may be subject, neither Employee nor the Company will be permitted to pursue court action regarding claims that are subject to arbitration. Notwithstanding the foregoing, the arbitrator will not have the authority to disregard or refuse to enforce any lawful policy of the Company, and the arbitrator shall not order or require the Company to adopt a policy not otherwise required by law which the Company has not adopted.

*See* Reilly Decl. Ex. B.

### C. Aksman Repeatedly Represents That He Manages An Equity Account for Brocco at Wedbush

Upon execution of the RCA, Aksman began to take an active role in marketing the fund to Greenwich's potential investors, participating in between 25 and 30 investor meetings between October 2017 and July 2019. *See* Reilly Decl. ¶ 7. Throughout this time, Aksman repeatedly

verified the authenticity of the Wedbush account both orally and in extensive email correspondence with Reilly and other Greenwich representatives, and continued to provide Greenwich with monthly updates concerning is alleged trading in the Wedbush account.  *See* Award at 5-6.

### D.  Greenwich Uncovers Aksman's Fraud and Files a Demand for Arbitration

Aksman's fraud was discovered only months before Greenwich was set to launch.  During the summer of 2019, Greenwich retained James Alpha, an investment advisor, to assist in its efforts to market the new fund.  *See* Award at 6-7.  James Alpha then decided to establish an account for one of its clients that Greenwich would trade so that it could generate an audited track record of Aksman's performance.  *See id.*  Because of Aksman's alleged trading for Brocco, James Alpha opted to use Wedbush as the prime broker for that account.  *See id.*

On September 10, 2019, Reilly and others at Greenwich participated in a phone call with representatives of James Alpha and Wedbush to discuss setting up the James Alpha account.  *See id.* at 7.  On that call, Sean Trager, a Wedbush Vice President, requested certain trading information so that he could prepare a price quote.  *See id*.  After Reilly suggested that he simply use the parameters for Aksman's existing Wedbush account, Trager responded that he could not locate such an account on Wedbush's system.  *See id.*

Over the next few weeks, Aksman sought to cover his tracks.  *See id.*  First, he insisted that Trager was simply mistaken.  *See id.*  Then, he suggested that Trager might be prohibited from discussing the details of Wedbush customer accounts.  *See id.*  On September 23, 2019, however, Greenwich obtained from James Alpha a copy of an email exchange in which Trager unambiguously informed Aksman: "You know full well there is no active account [at Wedbush] and that more specifically there is no cash on deposit or positions."  *See id.*

As his scheme was unraveling, Aksman made various inconsistent statements regarding the alleged Wedbush account. *See id.* On September 25, 2019, he stated in an email to Reilly that "Stefano got wind of [the] controversy and closed the account recently." *See id.* Subsequently, during a conference call with Reilly and others on October 3, 2019, Aksman said that the account had been closed more than one year earlier. *See id.* In an October 12, 2019 email, Aksman said that the account was closed at the end of 2018. *See id.* Aksman also declined Reilly's request that he provide official tax return transcripts to verify Aksman's claims concerning the income he allegedly had received for managing Wedbush account. *See id.*

Shortly thereafter, Greenwich terminated its relationship with Aksman, and filed with JAMS the Demand for Arbitration at issue in this case ("Demand for Arbitration"), alleging one cause of action against Aksman for fraud in connection with the above-described conduct. *See* Consolino Decl. Ex. E. Sean Trager subsequently confirmed that Aksman had not managed any account for Stefano Brocco at Wedbush at any point during the last five years. *See* Award at 8.

### E. Aksman Attempts to Avoid Service, and Thereafter Refuses to Participate in the Arbitration Process

On or about November 8, 2019, counsel for Greenwich emailed Aksman a courtesy copy of the Demand for Arbitration to an email address regularly used by Aksman in his correspondence with Reilly. *See* Consolino Decl. ¶ 2; Reilly Decl. ¶ 10. That same day, counsel for Greenwich sent the Demand for Arbitration to the business address of Equities Global Analytics LLC— Aksman's consulting firm—via Federal Express overnight. *See* Consolino Decl. ¶ 3. Then, on or about November 20, 2019, counsel for Greenwich sent the Demand for Arbitration via Federal Express to the home address of Michael Aksman at 8 Kent Place, North Plainfield, New Jersey ("8 Kent Place"), Aksman's admitted place of residence. *See id.* ¶ 4; Pet. to Vacate ¶ 3. The following day, an individual at 8 Kent Place rejected the Federal Express package, falsely claiming

that no one by the name of "Michael Aksman" lived at that address.  *See* Consolino Decl.  ¶ 5.  The package was returned to sender.  *See id.*

Thereafter, Greenwich made several attempts to serve Aksman personally.  On or about November 22, 2019, a process server for Greenwich attempted to serve the Demand for Arbitration on Michael Aksman at 8 Kent Place.  *See id.* Ex. F.  There, he spoke to an older woman with a heavy Russian accent—later identified as Aksman's housekeeper—who falsely informed the process server that Aksman was "in California."  *See id.*  The process server made six additional attempts to personally serve Aksman at 8 Kent Place, none of them successful.  *See id.*  On December 10, 2019, the process server spoke to a female resident of 8 Kent Place who identified herself as Maria Aksman, the ex-wife of Michael Aksman.  *See id.*  She falsely informed the process server that Aksman had moved to California, and that she did not have a current address for him there.

In January 2020, Greenwich retained a New York-based private investigation firm, Nardello & Co., to further attempt personal service on Aksman.  On January 16, 2020, Investigator Kenneth Cummings of Nardello & Co. arrived in the vicinity of 8 Kent Place.  *See id.* Ex. G.  There, he observed a 2006 Blue Infiniti bearing New Jersey license plate SYV66J parked in the driveway—a vehicle that was registered to Maria T. Platt-Aksman at the same address.  *See id.*  At about 9:05 am, Cummings knocked on the front door of the residence and Maria Aksman answered.  *See id.*  Cummings asked her if Aksman was at home, and Mrs. Aksman, again, falsely stated that he was not home, but at an unknown location in California.  *See id.*  Cummings left the Demand for Arbitration with Maria Aksman and parked a short distance away to take notes and make a call.  *See id.*

At about 9:10 am, the Blue Infiniti that was parked in the driveway of 8 Kent Place pulled up next to Cummings and stopped at a stop sign at the same intersection.  *See id.*  Cummings recognized Michael Aksman sitting in the passenger seat from the photos previously obtained from social media and recognized the woman behind the wheel from 8 Kent Place.  *See id.*  Cummings exited his car, and walked to the passenger side of the Infiniti, at which time Aksman partially opened the window.  *See id.*  As Cummings attempted to give Aksman a second copy of the Demand for Arbitration, Aksman pushed the papers out of the vehicle and onto the street and drove away.  *See id.*

Thereafter, both JAMS and Greenwich continued to serve Aksman with all filings via Federal Express, USPS, and/or his regular email address at maksman123@gmail.com, including the Preliminary Conference Report setting the arbitration hearing for April 16, 2020, Claimant's discovery requests, Claimant's witness list, and various other documents.  *See* Consolino Decl. ¶¶ 7-11, Award at 3.  Aksman did not respond to any attempts to contact him, did not file an answer, did not respond to any discovery requests, and did not participate in any conference calls.  *See* Consolino Decl. ¶ 12.

On February 4, 2020, the Arbitrator issued a Preliminary Conference Report, finding that "the agreement to arbitrate [] set forth in section 8(b) of the Restrictive Covenants Agreement between the parties" governs this dispute.  *See id.* Ex. C.  On April 16, 2020, the Arbitrator held an arbitration hearing over Zoom due to the emerging COVID-19 pandemic.  *See* Award at 3.  Aksman did not attend.  *See* Consolino Decl. ¶ 12.  On July 14, 2020, the Arbitrator issued a Final Arbitration Award, finding for Greenwich on its fraudulent misrepresentation claim, and awarding Greenwich $3,280,982.58 in compensatory and $750,000 in punitive damages.  *See* Award at 13.

**STANDARD OF REVIEW**

A petition to vacate an arbitral award "should [be] treated as akin to a motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006); *see also Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 28 (S.D.N.Y. 2017) (same). To prevail on summary judgment, the moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Furthermore, "[i]t is well established that courts must grant an arbitration panel's decision great deference." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (affirming denial of petition to vacate). When an arbitration award is challenged, the party seeking vacatur "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Id.*

The Federal Arbitration Act (FAA) governs this dispute. The FAA applies to arbitration agreements "evidencing a transaction involving commerce"—specifically, commerce "among the several States or with foreign nations." 9 U.S.C. §§ 1, 2. "[T]he Supreme Court has held that the term 'involving commerce' signifies the 'broadest permissible exercise of Congress' Commerce Clause power.'" *Adams v. Suozzi*, 433 F.3d 220, 225 (2d Cir. 2005) (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) in concluding that "no extended discussion is required to show that employment agreements . . . evidence a transaction involving commerce"). "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Citizens Bank*, 539 U.S. at 56-57 (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)). "In keeping with the broad interpretation of 'involving commerce,' 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Genger v. Genger*, 252 F. Supp.

3d 362, 365 (S.D.N.Y. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

The RCA "involve[es] interstate commerce" under the FAA for at least two reasons: *first*, Aksman's role as Senior Portfolio Manager involved the trading of U.S. and international equities, and *second*, Aksman met with investors in multiple states and used interstate telephone lines to communicate with investors. *See* Reilly Decl. ¶ 8; *S.E.C. v. Save The World Air Inc.*, No. 01 CIV. 11586(GBD)FM, 2005 WL 3077514, at *10 (S.D.N.Y. Nov. 15, 2005) (using interstate telephone lines to transmit faces and sending stock certificates via overnight courier was "sufficient to establish the requisite nexus to interstate commerce").

## ARGUMENT

## I.   AS THE ARBITRATOR FOUND, GREENWICH PROPERLY SERVED AKSMAN WITH THE DEMAND FOR ARBITRATION

Aksman's contention that he was not served with the Demand for Arbitration is demonstrably false.  See Pet. to Vacate ¶¶ 58, 77.  Under Rule 8 of the JAMS Comprehensive Arbitration Rules and Procedures, service "may be made by hand-delivery, overnight delivery, or U.S. mail."  *See* Consolino Decl. Ex. H (JAMS Comprehensive Arbitration Rules and Procedures, hereafter "JAMS Rules").  Section 4:4-4(a) of the New Jersey Rules of Court provide that service of process may be effected upon an individual either by serving him personally or by leaving a copy of the summons and complaint at the individual's usual dwelling or place of abode with a competent member of the individual's household over the age of fourteen residing there.[2]

---

[2] The Arbitration Agreement provides for the application of Delaware law, which in turn provides that service of process on an individual may be made in any manner that is permissible under the laws of the state where service is made for actions in its courts of general jurisdiction—in this case, New Jersey.  *See* Del. Code Ann. tit. 10, § 3104(d)(2).

The evidence proves beyond any doubt that Greenwich served Aksman with the Demand for Arbitration by nearly every conceivable method of service: first, counsel for Greenwich emailed the Demand for Arbitration to Aksman's regular email address; second, counsel for Greenwich sent the Demand for Arbitration via Federal Express to Aksman's residence at 8 Kent Place; third, a private investigator served the Demand for Arbitration by leaving it with Mrs. Askman at 8 Kent Place; and finally, a private investigator served the Demand for Arbitration on Aksman outside of his home.

Consistent with all available evidence, the Arbitrator found that Aksman had been properly served with the Demand for Arbitration:

> There seems to be little doubt that the service of the Demand in this case satisfies both alternative means [identified in the New Jersey Rules] since (i) a woman presumably Aksman's wife, accepted a copy at his residence, and (ii) he himself was given a copy only a little while later, although he pushed the papers out of the vehicle in which he was riding before he was driven away.  Moreover, Aksman also received a copy of the Demand from counsel via email and there is no indication that he had abandoned his email address by the time it was sent.  Indeed, since the initial service of the Demand, Aksman has repeatedly received emails from JAMS concerning procedural aspects of this case, none of which bounced back as undeliverable. In these circumstances, it is clear that Aksman has received sufficient notice of the Demand and the relief that Greenwich is seeking.

Award at 8-9.

Aksman cannot challenge the Arbitrator's findings here.   The Second Circuit has repeatedly affirmed that an arbitrator's factual findings are not subject to judicial review.[3]  *See*

---

[3] Aksman argues for vacatur pursuant to New York Civil Practice Law & Rules ("CPLR") § 7511. While the Second Circuit has not expressly addressed whether the FAA's statutory framework for vacatur preempts the CPLR, this Court has held that it does.  *See, e.g.*, *C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.*, 774 F. Supp. 146, 148 49 (S.D.N.Y. 1991) ("[I]n enacting the Federal Arbitration Act, 9 U.S.C. § 1, Congress established a national policy favoring arbitration pertaining to maritime transactions and to interstate and foreign commerce.  It is therefore clear that the federal statute, when it is applicable, preempts state statutes purporting to create alternative grounds for confirming or vacating arbitration awards. Accordingly, CPLR 7511 is inapplicable to this case." (internal citations omitted)).   Regardless, Aksman has not stated any plausible justification for

*South East Atlantic Shipping Ltd. v. Garnac Grain Co.*, 356 F.2d 189, 191-92 (2d Cir. 1966) ("Under our limited scope of review of arbitration awards, we are bound by the arbitrators' factual findings . . . ."); *ConnTech Development Co. v. Univ. of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 687 (2d Cir. 1996) (an erroneous factual determination "is not a ground for vacating the award"); *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 214 (2d Cir. 2002) ("The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law.").  That principle applies with equal force to an arbitrator's findings regarding sufficiency of service.  *See New York City District Council of Carpenters v. Trs. of the New York City Dist. Council of Carpenters Welfare Fund*, 16-CV-3429 (ARR)(ST), 2016 WL 6902138, at *12 (E.D.N.Y. Nov. 23, 2016) (where the arbitrator considered and concluded that the respondent "had legally sufficient notice of the proceeding and the claims against [it]," the court must defer to the arbitrator's determination (citing *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987))), *aff'd in part sub nom. New York City Dist. Council of Carpenters v. Best Made Floors Inc.*, 706 F. App'x 31 (2d Cir. 2017); *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension and Welfare Funds v. Rodrigue*, 13-CV-5760 (JS)(SIL), 2017 WL 9280115, at *8 (E.D.N.Y. Jan. 25, 2017) ("The Court is mindful that the absence of the Defendant and the question of proper notice were factors considered by the arbitrator and his decision to go forward is one that the Court should not overturn lightly.").

---

vacatur under any grounds set forth in the CPLR.  *See Liberty Mut. Ins. Co. v. Sedgewick of New York*, No. 15280/05, 2006-10186, 842 N.Y.S.2d 68, 69, 2007 N.Y. Slip Op. 06882, 2007 WL 2729450 (N.Y.A.D. 2 Dept. Sep. 18, 2007) ("Judicial review of an arbitrator's award is extremely limited and a reviewing court may not second-guess the fact-findings of the arbitrator" (internal citations omitted)).

Even if review were *de novo*—and it is not—there is no genuine dispute of material fact that Greenwich served Aksman with the Demand for Arbitration at his 8 Kent Place residence via Federal Express, which, by itself, constitutes proper service under the JAMS Rules. *See* JAMS Rule 8. Aksman does not dispute that the Demand for Arbitration was sent to 8 Kent Place via Federal Express; rather, he notes only that the address listed on the Demand for Arbitration itself was not his correct home address (in fact, it was his business address), a fact wholly irrelevant to the determination of whether service was properly effected.

Finally, Aksman's attempt to lodge a due process challenge does not withstand scrutiny. *See* Pet. to Vacate ¶¶ 17, 45. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 652 (S.D.N.Y. 2018) (citations and quotations omitted). "This means that a party is entitled only to notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 653. Due process "does not require perfect or actual notice." *Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289, 297 (S.D.N.Y. 2013). Greenwich's multiple, repeated efforts to serve Aksman were—without a doubt—"reasonably calculated" to apprise Aksman of the proceeding. *CBF*, 316 F. Supp. 3d at 653. Aksman's due process challenge thus fails.

## II.   BY REFUSING TO PARTICIPATE IN THE ARBITRATION PROCESS, AKSMAN HAS WAIVED ALL ARGUMENTS REGARDING THE ARBITRABILITY OF THIS DISPUTE

A party "cannot remain silent, raising no objection during the course of the arbitration proceeding, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first." *Cook Indus., Inc. v. C. Itoh & Co. (America) Inc.*, 449 F.2d 106, 108 (2d Cir. 1971). Having been properly served with the Demand for Arbitration, by

intentionally refusing to participate in the proceeding and failing to raise his objections to arbitrability, Aksman has waived them.

"'A forceful objection' is necessary to indicate an unwillingness to submit to arbitration." *S & G Flooring Inc. v. New York City Dist. Council of Carpenters Pension Fund*, No. 09 Civ. 2836 (NRB), 2009 WL 4931045 (S.D.N.Y. Sept. 1, 2009), at *5 (citing *In the Matter of the Arbitration between Halcot Navigation Ltd. P'ship and Stolt–Nielsen Transp. Group, et al*., 491 F. Supp. 2d 413, 418 (S.D.N.Y. 2007)). An objecting party does not need to "participate[] in the argument regarding arbitrability" but does need to "explicitly object[] to jurisdiction" to "reserve the right to object at a later court proceeding." *Id.* Even a general reservation of rights with respect to arbitrability is insufficient to preserve a party's objection; rather, a party must "specifically" identify his objections. *See Halcot*, 491 F. Supp. 2d at 419 (finding that though the party objected to jurisdiction, "simply stating a general reservation of rights with respect to arbitrability without in any way specifically objecting to the arbitrator's ruling on an issue submitted and briefed, does not preserve" the right to object). Furthermore, the JAMS Rules—incorporated by reference into the Arbitration Agreement (*see* Reilly Decl. Ex. B)—specifically provide that "[j]ursidictional challenges under Rule 11 [which governs jurisdictional and arbitrability disputes] shall be deemed waived unless asserted in a response to a Demand or counterclaim or promptly thereafter, when circumstances first suggest an issue of arbitrability." *See* JAMS Rule 9.

Here, Aksman not only failed to "forcefully" object to arbitration, he failed to raise any objection whatsoever at any point in time, failed to respond to any pleading or communication concerning the proceeding, and failed to participate in the arbitration and post-hearing matters altogether. *See* Consolino Decl. ¶ 12. Aksman has thus waived all objections to arbitrability.

The doctrine of waiver is well-purposed here.  Allowing respondents to wait until *after* the arbitration hearing to raise their arbitrability objections would have a stark chilling effect on the submission of disputes to arbitration, because a petitioner who wishes to arbitrate a dispute would face an impossible choice: to either bring his case in court and waive his right to arbitration, or bring his case in arbitration—but risk wasting significant amounts of time, effort, and money to arbitrate a dispute that a court may later find not arbitrable.  *See Nat'l Wrecking Co. v. Int'l Broth. Of Teamsters, Local 731*, 990 F.2d 957, 960-61 (7th Cir. 1993) ("Permitting parties to keep silent during arbitration and raise arguments in enforcement proceedings would 'undermine the purpose of arbitration which is to provide a fast and inexpensive method for the resolution of labor disputes." (citations omitted)).  Indeed, Aksman's failure to timely raise his arbitrability objections is highly prejudicial to Greenwich, which has expended a significant amount of time and resources arbitrating this dispute.  The Court should not allow such gamesmanship.

### III.   THE ARBITRABILITY OF THIS DISPUTE IS A QUESTION FOR THE ARBITRATOR, NOT THE COURT

Aksman challenges arbitrability on the grounds that the RCA is "void" because Aksman never became an employee of Greenwich.  *See* Pet. to Vacate ¶ 17.  While Aksman does not specifically reference this provision, Greenwich presumes Aksman is referencing Section 8(i) of the RCA, which provides: "[i]n the event that the Employee does not commence employment with the Company, this Agreement shall be void ab initio."  Reilly Decl. Ex. B.  Even if Aksman's objections to arbitrability were not waived (and they are), his challenge to arbitrability runs headlong into clear United States Supreme Court precedent, for two independent reasons.  First, the Supreme Court in *Buckeye Check Cashing, Inc. v. Cardegna* held that agreements to arbitrate are severable from the rest of the contract, and thus only challenges to the *arbitration agreement itself*—not the contract as a whole—are within the purview of the court.  546 U.S. 440, 445-46

(2006).  Four years later, the Supreme Court in *Rent-a-Center, West, Inc. v. Jackson* affirmed its holding in *Buckeye*, and further held that where an agreement delegates threshold questions of arbitrability to the arbitrator—such as the Arbitration Agreement here—failure to challenge "the delegation provision specifically" any challenge to the agreement as a whole must be considered by the arbitrator in the first instance.  561 U.S. 63, 68-72 (2010).  As explained in further detail below, *Buckeye* and *Rent-a-Center* each, independently, dispose of this case.

### A. Because Aksman Challenges the Validity of the Agreement As a Whole, the Arbitrator, Not the Court, Must Decide Arbitrability

In *Buckeye*, the plaintiffs alleged that the agreement containing the arbitration clause "violated various Florida lending and consumer-protection laws, rendering it criminal on its face." 546 U.S. at 443.  Relying on the rule of severability established by the Supreme Court in *Prima Paint Corp. v. Flood & Conklin Manufacturing Company*—namely, that "an arbitration provision is severable from the remainder of the contract"—the Court distinguished between "challenges specifically [directed to] the validity of the agreement to arbitrate" and "challenges [directed to] the contract as a whole."  *Id.* at 445-46 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)).  The Court held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  *Id.* at 444-46.  In so holding, the Court rejected the notion that a challenge to the underlying contract as "void," as opposed to merely "voidable," must be heard by the court rather than the arbitrator, reasoning that Section 2 of the FAA—which renders "valid, irrevocable, and enforceable" "an agreement in writing to submit to arbitration an existing controversy arising out of" a "contract" "must include contracts that later prove to be void."  *Id.* at 448.

While the Second Circuit, pre-*Buckeye*, distinguished between "void" and "voidable" contracts—requiring the former to be reviewed by the court in the first instance—"[c]ourts since

*Buckeye Check Cashing* have noted the death of the void versus voidable distinction and have found that an arbitrator has the authority under the FAA to determine whether a contract is void." *Ipcon Collections LLC v. Costco Wholesale Corp.*, No. 7:10–cv–9012 (VB), 2011 WL 3806255, at *3 (S.D.N.Y. Aug. 24, 2011) (argument that contract was fraudulently induced properly heard by the arbitrator, not the court), *aff'd*, 698 F.3d 58; *see also Rubin v. Sona Intern. Corp.*, 457 F. Supp. 2d 191, 196 (S.D.N.Y. 2006) (challenge that an agreement is void *ab initio* due to illegality must be heard by arbitrator); *Rosati v. E.M. Wings, LLC*, 09 CV 4680 (DRH)(ARL), 2011 WL 13305366, at *4 (E.D.N.Y. Apr. 12, 2011) (challenge that an agreement is "illusory" and "nonbinding" must be heard by arbitrator); *Abeona Therapeutics, Inc. v. EB Research P'ship, Inc*., 18cv10889(DLC), 2019 WL 623864, at *3 (S.D.N.Y. Feb. 14, 2019) (challenge that an agreement is void *ab initio* for want of consideration must be heard by arbitrator).

Here, Aksman's contention that the RCA is "void" is a challenge to the "contract as a whole," *see Buckeye*, 546 U.S. at 444, rather than a challenge specifically to the existence or validity of the contract's agreement to arbitrate. Aksman's challenge is therefore squarely within the purview of the Arbitrator, who found that this dispute was arbitrable.[4]

---

[4] The *Buckeye* Court carved out one exception to the rule that challenges to an agreement as a whole are before the arbitrator, noting that "[t]he issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." *Buckeye*, 546 U.S. at 44. Thereafter, the Second Circuit affirmed that *Buckeye* had "not modified [its] previous ruling that such questions about whether a contract was ever made. . . are presumptively to be decided by the court." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009). Because there is no dispute that an agreement was entered into between the Aksman and Greenwich—even Aksman admits as much in his Petition—this exception is inapplicable here. *See* Pet. to Vacate ¶¶ 10, 14 ("At or about the time the Restrictive Covenants Agreement was executed . . . ."); *see also Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) (because the plaintiff had "signed, dated, and spelled out his name" on a policy, he was bound by the policy, despite his argument that the agreement was invalid and unenforceable).

Aksman has no basis to challenge this finding.  In *Henry Schein*, the Supreme Court held that, where the question of arbitrability is within the purview of an arbitrator, the "court possesses no power to decide the arbitrability issue"—"even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."  *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S.Ct. 524, 529 (2019).  The question of arbitrability was therefore properly decided by the Arbitrator here, and his decision must stand.

## B. Aksman's Failure to Challenge the Delegation Clause Specifically Means the Arbitrator, Not the Court, Must Decide Arbitrability

Threshold questions pertaining to the arbitrability of the RCA are properly before the Arbitrator, and not the Court, for a second, independent reason: the Arbitration Agreement delegates to the arbitrator the authority to decide issues pertaining to the validity of the agreement.

The Supreme Court in *Rent-a-Center* recognized the longstanding principle that parties can agree to delegate to the arbitrator threshold question of arbitrability "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-a-Center*, 561 U.S. at 68-69.  A delegation provision, the Supreme Court held, is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  *Id.* at 70.  And because a delegation provision—as well as the arbitration clause within which it is contained—is severable from the rest of the contract, "unless [a party] challenge[s] the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], leaving any challenge to the validity of the Agreement as a whole for the arbitrator."  *Id.* at 72.

When "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."  *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d

Cir. 2005) (holding that the incorporation by reference of the AAA Commercial Arbitration Rules demonstrated parties' intent to arbitrate arbitrability).  The Arbitration Agreement expressly incorporates the JAMS Rules; *see* Reilly Decl. Ex. B, and Rule 11(b), in turn, specifically delegates the arbitrability of gateway issues to the arbitrator:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

The incorporation of Rule 11(b) of the JAMS Rules is thus "clear and unmistakable evidence of the parties' intent" to delegate the threshold issue of arbitrability to the arbitrator.  *See Contec*, 398 F. 3d at 208; *UBS Securities LLC v. Prowse*, 20cv217 (JGK), 2020 WL 433859, at *4 (S.D.N.Y. Jan. 27, 2020) (incorporation of Rule 11(b) of the JAMS Employment Arbitration Rules and Procedures, identical to provision 11(b) of the JAMS Rules, is "clear and unmistakable" evidence that the parties agreed to delegate questions of arbitrability to the arbitrator).  As Aksman has failed to challenge the "delegation provision specifically," the issue of arbitrability was, again, properly decided by the arbitrator.  *See Rent-a-Center*, 561 U.S. at 70-71.

## IV.   THE ARBITRATOR CORRECTLY DECIDED THAT THIS DISPUTE IS ARBITRABLE

Even if it were within this Court's power to review the Arbitrator's finding of arbitrability—and as the Supreme Court has made clear in *Henry Schein*, it is not—the Arbitrator correctly decided that this dispute is arbitrable, because it is a valid, enforceable agreement that is severable from the underlying contract.

As the Supreme Court has affirmed in *Buckeye* and most recently in *Rent-a-Center*, agreements to arbitrate are severable from the underlying contract.  *See Rent-a-Cent*er, 561 U.S. at 70-71 ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable

from the remainder of the contract." (quoting *Buckeye*, 546 U.S. at 445)).  Thus, "an agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce."  *Rent-a-Center*, 561 U.S. at 70.  The Arbitration Agreement at issue here is thus severable from the remainder of the RCA, and is valid whether or not the remainder of the Agreement is rendered void.

Aksman contends that the RCA is void for want of consideration because Aksman "was never an employee of Greenwich."  *See* Pet. to Vacate ¶ 17.  It is well-established, however, that a mutual agreement to arbitrate a dispute is the only consideration necessary to support an arbitration agreement.  *See Abeona Therapeutics, Inc. v. EB Research P'Ship, Inc.*, 18cv10889(DLC), 2019 WL 623864, at *4 (S.D.N.Y. Feb. 14, 2019) ("a failure of consideration in a contract as a whole does not render void a severable arbitration provision that is itself supported by adequate consideration"); *Kopple v. Stonebrook Fund Mgmt., LLC*, 794 N.Y.S.2d 648, 648 (App. Div. 1st Dept. 2005) ("[M]utual promises to arbitrate constitute [ ] consideration sufficient to support [an] arbitration agreement."); *Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) ("[Appellant's] promise to arbitrate was sufficient consideration to support [appellee's] promise to arbitrate.").  Here, the Arbitration Agreement—which provides arbitration shall be the "sole, exclusive and final remedy for any dispute between Employee and the Company"—is mutual, and thus supported by adequate consideration.  *See* Reilly Decl. Ex. B.  As such, it is a binding, enforceable agreement which must be enforced under Section 2 of the FAA, regardless of whether the underlying contract is void or voidable.

The language of the Arbitration Agreement itself further confirms that it survives even a void RCA: it provides that the Employee's agreement to arbitrate is made "[i]n consideration of Employee's employment **or engagement with** the Company."  *See* Reilly Decl. Ex. B (emphasis

added).  This language reinforces the conclusion that the Arbitration Agreement is enforceable regardless of the RCA's validity, because it establishes a condition precedent to arbitration separate and independent from those that govern the rest of the RCA—namely, Aksman's "engagement with" Greenwich.  It is clear from the face of the Award that Aksman did indeed "engage with" Greenwich, and thus, because this dispute has plainly met the condition precedent contained within the parties' Arbitration Agreement, it is arbitrable, even if none of the other grounds barring Aksman's petition were to apply.

## V. AKSMAN'S CHALLENGE TO THE ARBITRATOR'S DAMAGES AWARD FAILS

Lastly, Aksman challenges the quantum of damages awarded by the Arbitrator as "excessive" and "specious."  *See* Pet. to Vacate ¶¶ 62-65.  Again, Aksman has waived this argument by failing to raise it at any point during the arbitration proceeding.  *See York Research Corp. v. Landgarten*, 927 F.2d 119, 122 (2d Cir. 1991) (petitioner waived right to object to arbitrators by failing to raise objection prior to arbitration hearing).  Regardless, Aksman's challenge still fails.  Aksman cites no provision of either the FAA or the CPLR which justifies deviating from the well-established principle that "[a]n arbitration award should be enforced . . . if there is a barely colorable justification for the outcome reached."  *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) (quotations omitted); *see also Westerbeke*, 304 F.3d at 220 (the FAA "does not permit vacatur for legal errors" in the calculation of damages).  Aksman's challenge to the Arbitrator's award of damages must be denied.

## CONCLUSION

For the foregoing reasons, Greenwich respectfully requests that the Court deny Aksman's Petition to Vacate the Arbitration Award.

Respectfully submitted,

Dated: October 6, 2020

/s/ Serine Consolino
Paul C. Rauser
Serine Consolino
AEGIS LAW GROUP LLP
801 Pennsylvania Avenue, NW, Suite 740
Washington, D.C. 20004
Tel: (202) 737-3500
Fax: 202 735-5071
prauser@aegislawgroup.com

*Counsel for Greenwich Quantitative Research LP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of October, 2020, a true and accurate copy of the foregoing was filed with the Court's CM/ECF electronic filing system which will send notice of such filing to all counsel of record.

<p style="margin-left: 50%;">/s Serine Consolino<br>Serine Consolino</p>